[Civ. No. 9557. Third Dist. May 5, 1959.]

HAROLD SODERLING et al., Respondents, v. CHARLES H. TOMLIN et al., Appellants.

Kasch & Cook and Leo M. Cook for Appellants.

Burke & Rawles for Respondents.

PEEK, J.—This is an appeal by the defendants from a judgment cancelling and rescinding a land purchase option agreement entered into between plaintiffs as the purchaser-optionees and defendants as the owner-optioners. The judgment ordered plaintiffs to deliver up possession of the premises; ordered that defendants return the consideration paid for the option, plus the value of certain improvements and tax payments made by the plaintiffs, less the reasonable rental value of the property for the period of their occupancy; and declared the amount due plaintiffs to be a lien upon the property.

The option agreement which was entered into on June 23, 1956, provided that in consideration of the sum of $10,000 the plaintiffs were to have physical possession of the ranch, farm equipment and furnishings during the period of the option beginning July 15, 1956, and continuing for a period of one year; and that at any time during said period, plaintiffs had the option of purchasing said property for the sum of $95,000.

When viewed in the light most favorable to the plaintiffs-respondents, the record shows that defendants were the owners of a ranch located in Potter Valley, Mendocino County. Prior to the execution of the option, plaintiff Harold Soderling inspected the ranch in the company of defendant Charles H. Tomlin. Tomlin pointed out the boundary line of the property as running along a certain fence line on the west side of a creek and represented that a certain gravel bar was entirely

included within the boundary. It was further represented by Tomlin that the gravel bar was the only source of gravel in the Potter Valley area and the revenue therefrom was approximately $1,500 to $2,500 a year. He further represented that the only encumbrance on the property was a $35,000-mortgage. But contrary to defendant's representations, the description of the property by metes and bounds did not include all of the gravel bar, and the boundary did not run along the fence on the west side of the creek. The evidence further shows that there were some three other sources of gravel in the Potter Valley area, and that there was a Farm Home Administration chattel mortgage of $8,000 as an encumbrance upon the ranch equipment in addition to the $35,000-mortgage.

Both Mr. and Mrs. Soderling testified that they would not have signed the option agreement had they known the true facts.

The defendants contend that there can be no claim of intentional or negligent misrepresentation in that they honestly believed that the boundary line was as represented, and that said line as described was an agreed boundary line with the adjacent owners, the Cardozas. Any argument in this regard is but an attempt to reargue the facts on appeal, since the finding of the trial court that the representation as to the line was false and that defendants knew it to be false was amply supported by evidence that prior to the time the representations were made there had been a dispute between the defendants and the Cardozas concerning the ownership of a part of the gravel bar. Additionally Mrs. Cardoza denied that there was an agreement concerning the boundary line.

Defendants further contend that the representation concerning the mortgages cannot support a finding of fraud since, in any event, they would have been obligated to pay the chattel mortgage held by the Farm Home Administration in order to furnish clear title to plaintiffs should they exercise the option. This is but an argument to the materiality of the misrepresentation rather than the fact of misrepresentation.

As above stated, the facts support the finding that there were material misrepresentations which were known by defendants to be false at the time they were made, and that the plaintiffs justifiably relied upon such representations to their detriment. Under such circumstances the trial court properly granted rescission and cancellation of the instrument. (See *Lobdell* v. *Miller*, 114 Cal.App.2d 328, 336 [250 P.2d 357].)

Defendants next contend that plaintiffs waived their

right to rescind by accepting benefits under the option agreement and subsequent to the notice of rescission. (See *Neet* v. *Holmes*, 25 Cal.2d 447, 459 [154 P.2d 854].) In their brief defendants set forth certain transactions which, it is claimed, occurred after the notice of rescission. As to the transactions relating to the sales of gravel and the harvesting, sale and use of hay, we find nothing in the record to compel the inference that such transactions took place subsequent to the rescission so as to constitute a waiver as a matter of law. This court is, of course, bound by those inferences which support the judgment. (*Petersen* v. *Murphy*, 59 Cal.App.2d 528 [139 P.2d 49].)

However it does appear that one of the transactions did take place following the notice of rescission. In this regard it appears that plaintiffs accepted a payment of $250 for hunting privileges in October of 1957 and that the notice of rescission was served in May of that same year. However plaintiff Harold Soderling testified that upon taking possession on July 15, 1956, defendants represented that payment for hunting rights was due immediately. It thereafter developed that payment was not due until the following October, and hence plaintiffs were denied hunting rentals for three months. Thus the payment which was accepted was for the four months commencing October 22, 1957, would have encompassed a period of time including the time of trial of the action. However plaintiffs were entitled to retain possession of the ranch following the notice of rescission for so long as defendants refused to return the consideration paid for the option agreement. Of course the right was conditioned upon payment of a reasonable rental by plaintiffs. The acceptance of benefits consistent with the payment of a reasonable rental would not necessarily be inconsistent with a rescission of the option. Under such circumstances it cannot be said as a matter of law that plaintiffs waived their right to rescind. As the court held in *Neet* v. *Holmes, supra*, at page 459: " 'Waiver is rarely established as a matter of law, but an intent contrary to apparent acts must be disclosed.' " Again, in *French* v. *Freeman*, 191 Cal. 579, 590 [217 P. 515], it was stated: "The question of waiver or nonwaiver was one of fact for the trial court to pass upon, and the acts or conduct which defendant claims constituted said waiver were the evidence to be considered in determining the ultimate fact of waiver or nonwaiver. . . . Whether or not a person has ratified a voidable contract, or elected to affirm it rather than to rescind it, depends primarily upon his intention, and this is shown by his declarations, his acts, or his

conduct, which are matters of fact. The question is, therefore, a question of fact for the determination of the jury.''

■ We find no merit in defendants' further contention that there is no substantial evidence in the record to support the finding of the court that the reasonable rental value of the ranch was $3,000 per year. The plaintiffs testified that such was the reasonable rental value, and there was further testimony that a larger ranch in the same area was rented for $4,000 per year.

The defendants' remaining contentions, (1) that plaintiffs were not entitled to remain in possession of the ranch after notice of rescission, (2) that it was error for the court to make the amount of the judgment a lien against the ranch, and (3) that the amount of damages is incorrect in that the court allowed recovery for improvements which plaintiffs made to the real property and equipment and for certain taxes which were also paid by them, are also without merit.

■ It has been held that a defrauded vendee is entitled to retain possession of property following rescission. (*Kent* v. *Clark*, 20 Cal.2d 779, 785 [128 P.2d 868, 142 A.L.R. 576].) Also he is entitled to a lien for the amount of purchase money paid and the expenditures made upon the property, including taxes. (*Montgomery* v. *Meyerstein*, 186 Cal. 459, 464 [199 P. 800].) Likewise improvements made to realty and chattels, as well as taxes paid, are proper subjects for consequential damages in a rescission action. (*Lobdell* v. *Miller, supra*, at p. 343.)

Defendants' argument that the cases above cited are not in point, since they do not deal with option agreements, ignores the fact that the agreement in the present proceeding included more than the bare option, and under the terms thereof plaintiffs were induced to make the expenditures and improvements; hence they became proper items of damage.

The judgment is affirmed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

A petition for a rehearing was denied June 2, 1959, and appellants' petition for a hearing by the Supreme Court was denied July 1, 1959.

---

*Assigned by Chairman of Judicial Council.