2006 ND 195

The INDUSTRIAL COMMISSION OF NORTH DAKOTA, Acting as the North Dakota Housing Finance Agency, Plaintiff and Appellee,

v.

Kelly M. NOACK, a single person, Defendant and Appellant.

No. 20060067.

Supreme Court of North Dakota.

Sept. 13, 2006.

Alan Martin McDonagh, Special Assistant Attorney General, and Joseph R. Ellig, third-year law student, Grand Forks, N.D., for plaintiff and appellee.

Mark G. Schneider, Schneider & Schneider, Fargo, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Kelly Noack appealed from a district court judgment foreclosing a mortgage and dismissing her counterclaim seeking a declaratory judgment of rescission. We affirm, concluding Noack was not entitled to rescission of the promissory note and mortgage.

## I

[¶ 2]   On July 26, 2001, Noack executed a purchase agreement to buy a three-bedroom house in Hickson from Ryan Johnson.   The home was not connected to a municipal sanitary sewer system, but had a septic tank and drain field.   Unknown to Noack at the time, the septic system and drain field had a capacity of only 80 gallons per day.   For a three-bedroom house, the recommended minimum capacity of a septic system was 450 gallons per day. The size of the lot precluded expansion or improvement of the septic system.

[¶ 3]   Noack arranged for financing for purchase of the home through State Bank of Fargo ("Bank"), and on September 4, 2001, executed a note and mortgage in favor of the Bank. The mortgage was a Short–Term Redemption Act mortgage, which precluded the Bank from seeking a deficiency judgment against Noack in the event of a foreclosure.   On that same date, the Bank assigned the mortgage to the North Dakota Industrial Commission, acting as the North Dakota Housing Finance Agency ("NDHFA").

[¶ 4]   When Noack moved into the home with her three children, she learned that the septic system was inadequate. On March 22, 2002, Noack, through her attorney, sent a notice of rescission to the Bank and NDHFA seeking to rescind the sale of the property and all promissory notes and mortgage deeds.   The Bank and NDHFA rejected her attempt to rescind the promissory note and mortgage. Noack thereafter defaulted on the mortgage and promissory note.

[¶ 5]   NDHFA brought an action to foreclose the mortgage.   Noack filed a counterclaim for a declaratory judgment of rescission of the parties' agreements.   After a bench trial, the district court found that Noack had defaulted on the mortgage and promissory note and ordered foreclo-sure of the mortgage in favor of NDHFA. The court also dismissed Noack's counter-claim for rescission.

## II

[¶ 6]   NDHFA has moved to dismiss the appeal, based upon Noack's failure to provide a transcript on appeal.   An appellant has the duty to provide a transcript sufficient to allow a meaningful and intelligent review of the alleged errors. N.D.R.App.P. 10(b)(1); *Carpenter v. Rohrer*, 2006 ND 111, ¶ 13, 714 N.W.2d 804; *Wagner v. Miskin*, 2003 ND 69, ¶ 9, 660 N.W.2d 593.   Rule 3(a)(2), N.D.R.App.P., provides:

> An appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the supreme court to act as it considers appropriate, including dismissing the appeal.

*See also Lake Region Credit Union v. Crystal Pure Water, Inc.*, 502 N.W.2d 524, 528 (N.D.1993); *Sanford v. Sanden*, 333 N.W.2d 429, 431 (N.D.1983).   The determination whether to administer sanctions, including dismissal of the appeal, rests wholly within the discretion of this Court. *Lake Region Credit Union*, at 528; *Bye v. Federal Land Bank Ass'n*, 422 N.W.2d 397, 399 (N.D.1988).

[¶ 7]   We deny the motion to dismiss the appeal as a sanction for Noack's failure to provide a transcript.   In doing so, however, we reiterate the often-repeated admonition that an appellant assumes the consequences and risks for failure to file a complete transcript, and we will decline review of an issue if the record on appeal does not allow for a meaningful and intelligent review of the alleged error. *See, e.g., Carpenter*, 2006 ND 111, ¶ 13, 714 N.W.2d 804; *Wagner*, 2003 ND 69, ¶ 9, 660 N.W.2d 593.   Here on the record available we are

able to review the alleged error despite the lack of the transcript.

## III

[¶ 8] Noack contends she was entitled as a matter of law to rescind the sale and purchase of the property and the promissory note and mortgage deed, based upon the defective nature of the septic system.

[¶ 9] Under N.D.C.C. § 9–09–02(1), a party may rescind a contract if her consent was given by mistake. A mutual mistake of material fact may justify rescission under the statute. *Gust v. Peoples & Enderlin State Bank*, 447 N.W.2d 914, 920–21 (N.D.1989). Noack attempted to follow the procedure for rescission under N.D.C.C. § 9–09–04 by giving notice of rescission and subsequently bringing a counterclaim for rescission at law. *See Murphy v. Murphy*, 1999 ND 118, ¶ 13, 595 N.W.2d 571; *Barker v. Ness*, 1998 ND 223, ¶ 12, 587 N.W.2d 183.

[¶ 10] Throughout these proceedings, Noack has been laboring under a misapprehension of fundamental principles of rescission law. Her notice of rescission, sent to the Bank and NDHFA, states that she "hereby gives notice that ... she hereby rescinds the sale and purchase occurring on or about September 4, 2001, of the property ... and any and all instruments of debt pertaining to the sale and purchase." She views the purchase of the house and financing of the purchase as a single transaction, and seeks to rescind both transactions against NDHFA. The purchase of the home and the financing of that purchase, however, were separate and distinct transactions. Noack has not sought rescission of the purchase agreement against the seller, Ryan Johnson, and neither the Bank nor NDHFA was a party to the purchase agreement. Thus, the purchase agreement cannot be rescinded in this action. The only agreements properly before the Court are those between NDHFA and Noack—the promissory note and mortgage.

[¶ 11] Noack seeks to rescind the promissory note and mortgage based on an alleged mutual mistake about the condition of the property purchased with the funds advanced under the note. It is a well-settled rule of the law of rescission, however, that a mistake as to a collateral matter does not justify rescission. *See, e.g., Horner v. Bourland*, 724 F.2d 1142, 1145 (5th Cir.1984) (mistake must be essential to the consequences of the agreement and not relate to a mere incident thereto); *MAN Roland Inc. v. Quantum Color Corp.*, 57 F.Supp.2d 576, 580 (N.D.Ill.1999) (mistake must relate back to an essential element of the contract, and defects do not change the subject matter of the contract); *Yaffie v. Lawyers Title Ins. Corp.*, 1998 ME 77, ¶ 8, 710 A.2d 886 (mistake must touch the subject matter of the bargain and not merely be collateral to it); *Durham v. Uvalde Rock Asphalt Co.*, 599 S.W.2d 866, 870 (Tex.Civ.App.1980) ("the mistake must involve the subject matter of the contract and the substance thereof" and "may not be related to a mere collateral matter"); 27 Richard A. Lord, *Williston on Contracts* § 70:84, at 470 (4th ed.2003) ("the mutual mistake must be material to the transaction, must touch upon the subject matter of the bargain and not merely be collateral to it"). Professor Lord further explains:

As a general rule, a mistake as to a collateral matter has no effect upon a contract ... The boundaries of such a rule are not precisely fixed. Broadly stated, however, it means that where the persons and things to which the contract relates are the very persons and things the parties had in mind, and the transaction too is the kind of transaction the

parties contemplated, then mistakes as to other, collateral facts are not materially important enough to warrant rescission or reformation.

27 Lord, *supra*, § 70:84, at 470.

[¶ 12] In *Horner*, 724 F.2d at 1145, the court drew a clear distinction between mutual mistakes in the purchase of property and the financing for the purchase. The parties had entered into a contract for sale of property providing that the purchase price would be paid by refinancing an FHA loan. *Horner*, 724 F.2d at 1143–44. Contrary to the parties' belief, FHA financing was not available for the purchase. The court concluded the mistake did not meet the standard for rescission, holding the availability of FHA financing "did not go to the essence of the parties' agreement, but affects only a matter collateral to the transfer of the real estate." *Id.* at 1145.

[¶ 13] We similarly conclude that a mutual mistake about the condition of property purchased with the proceeds of a promissory note does not go to the essence of the parties' agreement, but is merely collateral to the loan transaction. In this case, Noack sought a loan to purchase a home, the loan was provided to her, and she purchased the home. There was no mistake as to the amount of the note or the terms of the mortgage. There was no mistake as to the description of the property covered by the mortgage. Noack borrowed the money she sought on the terms to which she agreed, and received exactly what she contracted for with the Bank and NDHFA. Thus, "the persons and things to which the contract relates are the very persons and things the parties had in mind, and the transaction too is the kind of transaction the parties contemplated." 27 Lord, *supra*, § 70:84, at 470.

[¶ 14] Noack contends this Court's decision in *Gust* requires a different result.

Gust had executed a promissory note and collateral real estate mortgage to the bank to secure operating funds for his nephew's farming operations. The bank twice extended the promissory note, but failed to file an addendum continuing the mortgage lien as required by statute. *Gust*, 447 N.W.2d at 915. The parties, mistakenly believing the lien was still valid, entered into a settlement agreement whereby Gust acknowledged he was in default and the bank had a mortgage on the land. *Id.* at 916. Under the settlement agreement, Gust deeded the land to the bank, which credited his account $140,000. *Id.* Upon learning the prior mortgage had lapsed and was invalid, Gust sought rescission of the settlement agreement. This Court upheld judgment granting rescission of the settlement agreement. *Id.* at 921.

[¶ 15] *Gust* is different from this case. In *Gust*, the settlement agreement expressly stated that the mortgage lien served as security for Gust's indebtedness, and the agreement was intended to resolve all of Gust's outstanding credit obligations and all legal remedies available to the parties to enforce the credit obligations. *Id.* at 921. In that case, the prior mortgage liens were part of the credit obligations to be resolved by the settlement agreement, and therefore related to the essential elements and subject matter of the contract. In this case, conversely, the defects in the home were not related to the essential elements and subject matter of the loan transaction, but were merely collateral.

[¶ 16] Furthermore, Noack failed to comply with the requirements for rescission under N.D.C.C. § 9–09–04. Under the statute, a party seeking rescission must provide notice of rescission to the other party, and:

> The party rescinding shall restore to the other party everything of value which

the party rescinding has received from the other party under the contract or must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so.

N.D.C.C. § 9–09–04(2); *see Murphy*, 1999 ND 118, ¶ 13, 595 N.W.2d 571; *Barker*, 1998 ND 223, ¶ 12, 587 N.W.2d 183. Under the statute, it is contemplated the parties will be placed in their original position, and restoration of the preceding status quo is therefore a requirement for rescission. *West v. Carlson*, 454 N.W.2d 307, 309 (N.D.1990); *Blair v. Boulger*, 358 N.W.2d 522, 524 (N.D.1984); *Alton's, Inc. v. Long*, 352 N.W.2d 198, 200 (N.D.1984). Compliance with the statute is a condition precedent to an action to rescind. *Blair*, at 524.

[¶ 17] In her notice of rescission, Noack offered to "restore the subject premises" to the Bank and NDHFA by "executing appropriate quit claim deed(s) to the subject property." The statute, however, required that Noack offer to "restore to the other party everything of value which the party rescinding has received from the other party under the contract." N.D.C.C. § 9–09–04(2). Noack did not receive the property from the Bank or NDHFA—she received money. For Noack to rescind the note and mortgage against the Bank and NDHFA, she would have to restore the money they provided in order to place the parties in their original position and restore the status quo. Noack's attempt to "restore" the property to the Bank and NDHFA is another example of her mistaken assumption that she can rescind the separate purchase agreement against the Bank and NDHFA. If Noack wishes to rescind the purchase agreement and return the property, her claim for rescission lies against the seller, not against the Bank or NDHFA.

### IV

[¶ 18] We conclude any mutual mistake regarding the condition of the property did not warrant rescission of the promissory note and mortgage, and Noack did not comply with the procedure for rescission under N.D.C.C. § 9–09–04. Accordingly, the district court did not err in dismissing Noack's counterclaim for rescission.

[¶ 19] The judgment is affirmed.

[¶ 20] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.